## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TED SPRAUGE, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 3:10-cv-00426-JPG-PMF |
| | ) | |
| SYNGENTA CROP PROTECTION, INC., | ) | |
| SYNGENTA AG, AND SYNGENTA | ) | *JURY TRIAL DEMANDED* |
| CORPORATION | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

## COMPLAINT FOR FALSE PATENT MARKING

Relator Ted Sprauge ("Relator"), by and through the undersigned attorneys, for his

Complaint against Defendants Syngenta Crop Protection, Inc., Syngenta AG, and Syngenta

Corporation ("Defendants"), alleges as follows:

### NATURE OF THE CASE

1.    This is a qui tam action for false patent marking under 35 U.S.C. § 292.

2.    As set forth in detail below, Defendants have violated 35 U.S.C. § 292(a) by

falsely marking articles with expired patents for the purpose of deceiving its competitors and the

public into believing that such articles are covered by the falsely marked patents.

### PARTIES, JURISDICTION AND VENUE

3.    Relator Ted Sprauge is a natural person and citizen and resident of the Southern

District of Illinois.

1

4.      Upon information and belief, Defendant Syngenta AG is a corporation organized and existing under the laws of Switzerland, having its principal place of business in Schwarzwaldallee 215, 4058 Basel, Switzerland.

5.      Upon information and belief, Defendant Syngenta Corporation is a corporation organized and existing under the laws of Delaware, having its principal place of business at 2200 Concord Pike, P. O. Box 8353, Wilmington, DE 19803-8353.

6.      Upon information and belief, Defendant Syngenta Crop Protection, Inc. is a corporation organized and existing under the laws of Delaware, having its principal place of business at P.O. Box 18300, Greensboro, NC 27409.

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

8.      Venue is proper in this District under 28 U.S.C. §§ 1391(c) and 1395(a), because Defendants have conducted and continue to conduct business in this District through the sale of their products which are the subject matter of this Complaint to consumers throughout this District.

9.      Upon information and belief, such sales are substantial, continuous, and systematic.

10.      Venue is also proper in this District because the Relator resides in this district.

**DEFENDANTS AND THEIR FALSELY MARKED PRODUCTS**

11.      Defendants make, sell, or have made and have sold, a variety of products for sale to distributors, retailers, and the general consuming public. Such products include, but are not limited the products sold under the following trademarks and product names: Amber, Bicep II Magnum, Bicep Lite II Magnum, Callisto, Clinch, Denim, Dual II Magnum, Dual Magnum,

2

Fulfill, Lumax, Medal II AT, Medal, Palisade EC, Solicam DF, Zephyr 0.15 EC, Spirit, Rave,

Prime + EC, Northstar, Medal II, Maxim MZ, Lexar, Expert, Dual II Magnum SI, Dual II G

Magnum, Curacron 8E, Callisto Xtra, Bicep II Magnum FC, Beacon, DemonMax, Probuild TC,

Bonzi, Award, Optigard, Avid 0.15 EC, and Pennant Magnum.

12.     Defendants mark the labels, product inserts, and/or packaging of each of the

products recited in Paragraph 11 with at least one expired patent number or refer to these

products on their Web site as having current and previous labels with at least one expired patent

number.

13.     Further, certain products and/or labels, product inserts, and/or packaging of the

products recited in Paragraph 11 were created and/or copyrighted *after* the patents expired, and

yet were still marked with expired patent numbers.

14.     For example, upon information and belief, DemonMax was launched in 2005.

See, Ex. 1.

15.     The label, insert and/or packaging of DemonMax is marked with the 4,024,163

patent. See, Ex. 2.[1]

16.     The '163 patent, however, expired at the latest in August of 1994.

17.     Therefore, Defendants marked a product created over a decade after the 4,024,163

patent expired, with the 4,024,163 patent.

---

[1] In the interests of brevity, plaintiff provides excerpted product labels as exhibits. With the exception of Avid 0.15EC, each product label exhibit comprises: 1) the product label's cover sheet(s), and 2) the page(s) indicating copyright date and expired patent number(s). Plaintiff will provide full product labels upon request. At the time of filing, full product labels are also accessible at Syngenta's web sites, www.syngenta.com or www.syngentaprofessionalproducts.com. For example, the current label for the Demon Max product can be located at www.syngentaprofessionalproducts.com/pdf/labels/SCP1218AL1A0505.pdf which is accessible from www.syngentaprofessionalproducts.com.

18.     In addition, upon information and belief, Optigard was launched in 2007.  See, Ex. 3, Excerpts from 2006 Annual Report at 37.

19.     The label, insert and/or packaging of Optigard is marked with the 4,310,519 patent. See, Ex. 4.

20.     The 4,310,519 patent, however, expired at the latest in January of 1999.

21.     Therefore, Defendants marked a product created nearly a decade after the '519 patent expired, with the 4,310,519 patent.

22.     Further, according to Defendants' Web site, Solicam DF's current and previous labels (from 2009 and 2004 respectively) are marked with the both the 3,935,210 patent and the '889 patent. Exs. 5 and 6. The 3,843,889 patent, however, expired no later than September 1991, and the 3,935,210 patent expired no later than May 1994.  Defendants therefore affirmatively chose to create new labels and mark Solicam DF in both 2004 and 2009 with patents that expired years before these labels existed.

23.     Defendants are sophisticated business entities with extensive experience in the procurement, acquisition, and litigation of patents in the United States.

24.     Because of the nature of their business, Defendants actively seek and maintain a number of patents.

25.     Defendants claim to own, or have licenses under, a substantial number of patents and patent applications.

26.     Upon information and belief, Defendants have an in-house legal department which is responsible for Defendants' intellectual property and ensuring compliance with marketing, labeling, and advertising laws.

27.     As sophisticated business entities, Defendants know or reasonably should have known of the requirements and provisions of 35 U.S.C. § 292.  This is supported by the following facts.

28.     Defendants have made numerous public statements that they are aware of how long their patents will be in force, and that they actively track such data.  These facts are admitted, at a minimum, in Defendants' annual report filings.  See, Ex. 7, Excerpts from 2004 Annual Report at 7 ("…an increasing number of products are coming off patent…") and Ex. 3, Excerpts from 2006 Annual Report at 210 ("Intangible assets are amortized on a straight line basis over the following estimated useful lives:…Trademarks and patents 10 to 20 years" and "**Patents** and trademarks are amortized on a straight-line basis over their estimated economic or **legal life**, whichever is shorter" (emphasis added)).[2]

29.     In its 2004 Annual Report, Defendants describe a tactic they utilize to keep products protected by patents, even after the original patent covering that product lapses:

> In addition to patent protection for a specific active substance, patent protection may be obtained for processes of manufacture, formulations, assays, mixtures, and intermediates. These patent applications may be filed to cover continuing research throughout the life of a product **and may remain in force after the expiry of a products [*sic*] per se patents in order to provide ongoing protection**.

Ex. 7, Excerpts from 2004 Annual Report at 29 (emphasis added).

---

[2] These filings are available in their entirety at
http://secfilings.nasdaq.com/filingFrameset.asp?FileName=0000950103%2D05%2D000462%2Etxt&FilePath=%5C2005%5C03%5C16%5C&CoName=SYNGENTA+AG&FormType=20%2DF&RcvdDate=3%2F16%2F2005&pdf=
and
http://secfilings.nasdaq.com/filingFrameset.asp?FileName=0000950103%2D07%2D000591%2Etxt&FilePath=%5C2007%5C03%5C07%5C&CoName=SYNGENTA+AG&FormType=20%2DF&RcvdDate=3%2F7%2F2007&pdf=
respectively.

30.     Thus, defendants admit they try to keep their products patented for as long as possible.

31.     Defendants have also publicly recognized that a number of their patents on their products have or are in the process of lapsing, and that should these patents lapse, others will be in a better position to compete against these products.  For example, in their 2004 Annual Report, Defendants state that "**[A]n increasing number of products are coming off patent** and are thus available to generic manufacturers for production. **As a result, Syngenta anticipates that it will continue to face significant competitive challenges.**"  Ex. 7, Excerpt from 2004 Annual Report at 7 (emphasis added).

32.     Defendants have therefore admitted publicly that competition would increase if their competitors would become aware that Defendants' products were no longer protected by patents.

33.     Defendants have in the past marked or caused to be marked, and continue to mark or cause to be marked, articles with at least one expired patent.

34.     Each false marking on Defendants' products is likely to, or at least has the potential to, discourage or deter persons and companies from making or selling similar or competing products.

35.     By falsely marking its products with patents that have expired, Defendants have benefitted commercially and financially, and have limited competition against such products.

36.     Thus, by marking and continuing to mark articles with expired patent numbers without a reasonable belief that such articles were covered by the patents, Defendants have injured the sovereign interests of the United States as well as the public interest of at least

6

Defendants' customers who purchased such products, and has discouraged competition and innovation in competing products.

## **THE EXPIRED PATENTS**

37.    U.S. Patent No. 3,834,889 ("the '889 patent"), entitled, "HERBICIDAL COMPOSITION AND METHOD EMPLOYING PYRIDZONE DERIVATIVES," issued September 10, 1974. A true and correct copy of this patent is attached as Exhibit 8 to this complaint.

38.    The '889 patent expired no later than 1991.

39.    U.S. Patent No. 3,935,210 ("the '210 patent"), entitled, "PREPARATION OF 1-ARYL-4, 5-DIHALO-PYRIDZONE-6," was filed on May 20, 1974 and issued on January 27, 1976. A true and correct copy of this patent is attached as Exhibit 9 to this complaint.

40.    The '210 patent expired no later than May 1994.

41.    U.S. Patent No. 3,992,533 ("the '533 patent"), entitled, "O-THYL-S-n-PROPYL-O-(2-CHLORO-4-BROMOPHNYL)-THIOPHOSPHATE," was filed on March 14, 1975 and issued on November 16, 1976. A true and correct copy of this patent is attached as Exhibit 10 to this complaint.

42.    The '533 patent expired no later than March of 1995.

43.    U.S. Patent No. 4,024,163 ("the '163 patent) entitled, "Insecticides," was filed on August 13, 1974 and issued on May 17, 1977. A true and correct copy of this patent is attached as Exhibit 11 to this complaint.

44.    The '163 patent expired no later than August 1994.

45.    U.S. Patent No. 4,169,721 ("the '721 patent"), entitled, "N-(ORTHO-SUBSTITUTED BENZYL)-DINITRO-TRIFLUOROMETHYL-ANILINES AS PLANT

GROWTH REGULANTS," was filed on December 5, 1977 and issued on October 2, 1979. A true and correct copy of this patent is attached as Exhibit 12 to this complaint.

46.     The '721 patent expired no later than December 1997.

47.     U.S. Patent No. 4,215,139 ("the '139 patent"), entitled, "CARBAMIC ACID DERIVATIVES," was filed on March 6, 1979 and issued on July 29, 1980. A true and correct copy of this patent is attached as Exhibit 13 to this complaint.

48.     The '139 patent expired no later than March of 1999.

49.     U.S. Patent No. 4,243,405 ("the '405 patent"), entitled, "FUNGICIDAL COMPOUNDS," was filed on August 19, 1977, and issued on January 6, 1981. A true and correct copy of this patent is attached as Exhibit 14 to this complaint.

50.     The '405 patent expired no later than January 1998.

51.     U.S. Patent No. 4,310,519 ("the '519 patent"), entitled, "NOVEL SUBSTANCES AND PROCESS FOR THEIR PRODUCTION," was filed on September 8, 1978 and issued on January 12, 1982. A true and correct copy of this patent is attached as Exhibit 15 to this complaint.

52.     The '519 patent expired no later than January 1999.

53.     U.S. Patent No. 4,427,663 ("the '663 patent"), entitled, "4"-KETO-AND 4"AMINO-4"-DEOXY AVERMECTIN COMPOUNDS AND SUBSTITUTED AMINO DERIVATIVES THEREOF," was filed on March 16, 1982, and issued on January 24, 1984. A true and correct copy of this patent is attached as Exhibit 16 to this complaint.

54.     The '663 patent expired no later than March 2002.

8

55.   U.S. Patent No. 4,478,635 ("the '635 patent"), entitled, "N-ARYLSULFONYL-N'-PYRIMIDINYLUREAS," was filed on January 3, 1983, and issued on October 23, 1984.  A true and correct copy of this patent is attached as Exhibit 17 to this complaint.

56.   The '635 patent expired no later than January 2003.

57.   U.S. Patent No. 4,514,212 ("the '212 patent"), entitled, "N-PHENYLSULFONYL-N-TRIAZINYLUREAS," was filed on January 17, 1983 and issued on April 30, 1985. A true and correct copy of this patent is attached as Exhibit 18 to this complaint.

58.   The '212 patent expired no later than January 2003.

59.   U.S. Patent No. 4,618,361 ("the '361 patent"), entitled, "ACYLAMIDES AND COMPOSITIONS FOR THE PROTECTION OF CULTIVATED PLANTS AAINST THE PHYTOTOXIC ACTION OF HERBICIDES," was filed on December 12, 1983, and issued on October 21, 1986. A true and correct copy of this patent is attached as Exhibit 19 to this complaint.

60.   The '361 patent expired no later than December 2003.

61.   U.S. Patent No. 4,671,819 ("the '819 patent'), entitled, "N-PHENYLSULFONYL-N-TRIAZINYLUREAS," was filed on December 17, 1985, and issued on June 9, 1987.   A true and correct copy of this patent is attached as Exhibit 20 to this complaint.

62.   The '819 patent expired no later than December 2005.

63.   U.S. Patent No. 4,693,745 ("the '745 patent"), entitled, "CYCLOHEXANEDIONE-CARBOXYLIC ACID DERIVATIVES WITH HERBICIDAL AND PLANT GROWTH REGULATING PROPERTIES," was filed on October 9, 1985, and

issued on September 15, 1987. A true and correct copy of this patent is attached as Exhibit 21 to this complaint.

64.     The '745 patent expired no later than October 2005.

65.     U.S. Patent No. 4,705,800 ("the '800 patent"), entitled,

"DIFLUORBENZODIOXYL CYANOPYRROLE MICROBICIDAL COMPOSITIONS," was filed on June 13, 1986, and issued on November 10, 1987. A true and correct copy of this patent is attached as Exhibit 22 to this complaint.

66.     The '800 patent expired no later than June 2006.

67.     U.S. Patent No. 4,874,749 ("the '749 patent'), entitled, "4"-DEOXY-4"-N-METHYLAMINO AVERMECTIN BLA/BLB," was filed on July 31, 1987, and issued on October 17, 1989. A true and correct copy of this patent is attached as Exhibit 23 to this complaint.

68.     The '749 patent expired no later than January 2001 due to a terminal disclaimer filed at the USPTO.

69.     U.S. Patent No. 4,931,439 ("the '439 patent"), entitled, "PESTICIDES," was filed on October 11, 1988, and issued on June 5, 1990. A true and correct copy of this patent is attached as Exhibit 24 to this complaint.

70.     The '439 patent expired no later than October 2008.

71.     U.S. Patent No. 5,002,606 ("the '606 patent"), entitled, "OPTICALLY ACTIVE N-(1'METHYL-2'-METHOXYETHYL)-N-CHLOROACETYL-2-ETHYL-6-METHYLANILINE AS HERBICIDE," was filed on December 7, 1984 and issued on March 26, 1991. A true and correct copy of this patent is attached as Exhibit 25 to this complaint.

72.     The '606 patent expired no later than March 2008.

10

73.    U.S. Patent No. 5,006,158 ("the '158 patent"), entitled, "CERTAIN 2-(2-SUBSTITUTED BENZOYL)-1,3-CYCLOHEXANEDIONES," was filed on February 23, 1988, and issued on April 9, 1991. A true and correct copy of this patent is attached as Exhibit 26 to this complaint.

74.    The '158 patent expired no later than April 2008.

## COUNT I

### FALSE PATENT MARKING OF PRODUCTS WITH THE '519 PATENT

75.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-74 of this Complaint.

76.    Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '519 patent.

77.    Such products include, but are not limited to, those sold under the product names, trade names and/or trademarks Avid 0.15 EC, Varsity, Optigard, Zephyr 0.15EC, Agri-Mek 0.15EC, and Clinch.

78.    Images of the current labels of these products (as verified through Defendants' Web site or actual images of the label on the product's container) are attached hereto as Exhibits 4 and 27A and 28-31 to this Complaint.

79.    The Avid 0.15 EC label is marked with the '519 patent and states that the label was copyrighted in 2005. Upon information and belief, this label has been utilized on Defendants' products since at least 2005. Ex. 27A.

80.    The previous Avid 0.15 EC label (also verified from Defendants' Web site) states it was copyrighted 2005, and is similarly marked with the '519 patent. Ex. 27B. Upon information and belief, this label was utilized between the years 2005 and 2009.

11

81.     The Varsity label is marked with the '519 patent and states that the label was copyrighted in 2003.  Upon information and belief, this label has been utilized on Defendants' products since at least 2003.  Ex. 28.

82.     The Optigard label is marked with the '519 patent and states that the label was copyrighted in 2009.  Upon information and belief, this label has been utilized on Defendants' products since at least 2009.  Ex. 4.

83.     The Zephyr 0.15EC label is marked with the '519 patent and states that the label was copyrighted in 2008.  Upon information and belief, this label has been utilized on Defendants' products since at least 2008.  Ex. 29.

84.     The previous Zephyr 0.15EC label (also verified from Defendants' Web site) states it was copyrighted 2003, and is similarly marked with the '519 patent.  Ex. 32.  Upon information and belief, this label was utilized between the years 2003 and 2008.

85.     The Agri-Mek 0.15EC label states that it was copyrighted in 2009.  Upon information and belief, this label has been utilized on Defendants' products since at least 2009.  Ex. 30.

86.     The Clinch label states that it was copyrighted in 2008.  Upon information and belief, this label has been utilized on Defendants' products since at least 2008.  Ex. 31.

87.     The previous Clinch label (also verified from Defendants' Web site) states it was copyrighted 2003, and is similarly marked with the '519 patent.  Ex. 33.  Upon information and belief, this label was utilized between the years 2003 and 2008.

88.     Although Defendants marked at least their Avid 0.15 EC, Varsity, Optigard, Zephyr 0.15EC, Agri-Mek 0.15EC, and Clinch products with the '519 patent during these time frames, the '519 patent expired no later than January 1999.

89.     Avid 0.15 EC, Optigard, Varsity, Zephyr 0.15EC, Agri-Mek 0.15EC and Clinch were thus marked with the '519 patent, despite the fact the '519 patent expired.

90.     The instances of false marking shown in Exhibits 4 and 27A, 27B, and 28-32 are representative and not exhaustive.

91.     Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

92.     Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '519 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

93.     Upon information and belief, Defendants have marked and continue to mark their products with the '519 patent for the purpose of deceiving the public into believing that their products are covered by the '519 patent.

94.     Upon information and belief, Defendants intentionally included the '519 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

## COUNT II

## FALSE PATENT MARKING OF PRODUCTS WITH THE '212 PATENT

95.     Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-94 of this Complaint.

96.     Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '212 patent.

97.     Such products include, but are not limited to, those sold under the product names, trade names and/or trademarks Amber and Rave.

98.     Images of the current labels of these products (as verified through Defendants' Web site) are attached hereto as Exhibits 34 and 35 to this Complaint.

99.     The Amber label is marked with the '212 patent and states that the label was copyrighted in 2010. Upon information and belief, this label has been utilized on Defendants' products since at least 2010. Ex. 34.

100.     The previous Amber label (also verified from Defendants' Web site) states it was copyrighted in 2006, and is similarly marked with the '212 patent. Ex. 36. Upon information and belief, this label was utilized between the years 2006 and 2010.

101.     The Rave label states that it was copyrighted in 2010. Upon information and belief, this label has been utilized on Defendants' products since at least 2010. Ex. 35.

102.     The previous Rave label (also verified from Defendants' Web site) states it was copyrighted in 2005, and is similarly marked with the '212 patent. Ex. 37. Upon information and belief, this label was utilized between the years 2005 and 2010.

103.     Although Defendants marked at least their Amber and Rave products with the '212 patent during these time frames, the '212 patent expired no later than January 2003.

104.     Both Amber and Rave were thus marked with the '212 patent, despite the fact the '212 patent expired.

105.     The instances of false marking shown in Exhibits 34-37 are representative and not exhaustive.

14

106.    Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

107.    Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '212 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

108.    Upon information and belief, Defendants have marked and continue to mark their products with the '212 patent for the purpose of deceiving the public into believing that their products are covered by the '212 patent.

109.    Upon information and belief, Defendants intentionally included the '519 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

## COUNT III

## FALSE PATENT MARKING OF PRODUCTS WITH THE '533 PATENT

110.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-109 of this Complaint.

111.    Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '533 patent.

112.    Such products include, but are not limited to, those sold under the product name, trade name and/or trademark Curacron 8E.

113.    Images of the current labels of this product (as verified through Defendants' Web site) are attached hereto as Exhibit 38 to this Complaint.

15

114.   The Curacron 8E label is marked with the '533 patent and states that the label was copyrighted in 2009.  Upon information and belief, this label has been utilized on Defendants' products since at least 2009.  Ex. 38.

115.   The previous Curacron 8E label (also verified from Defendants' Web site) states it was copyrighted 2008, and is similarly marked with the '533 patent.  Ex. 39.  Upon information and belief, this label has been utilized on Defendants' products between the years 2008 and 2009.

116.   Although Defendants marked at least their Curacon 8E products with the '533 patent during these time frames, the '533 patent expired no later than March 1995.

117.   Curacron 8E was thus marked with the '533 patent, despite the fact the '533 patent expired.

118.   The instances of false marking shown in Exhibits 38 and 39 are representative and not exhaustive.

119.   Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

120.   Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '533 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

121.   Upon information and belief, Defendants have marked and continue to mark their products with the '533 patent for the purpose of deceiving the public into believing that their products are covered by the '533 patent.

122.    Upon information and belief, Defendants intentionally included the '533 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

## COUNT IV

## FALSE PATENT MARKING OF PRODUCTS WITH THE '889 PATENT

123.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-122 of this Complaint.

124.    Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '889 patent.

125.    Such products include, but are not limited to, those sold under the product name, trade name and/or trademark Solicam DF.

126.    Images of the current label of this product (as verified through Defendants' Web site) are attached hereto as Exhibit 5 to this Complaint.

127.    The Solicam DF label is marked with the '889 patent and states that the label was copyrighted in 2009.  Upon information and belief, this label has been utilized on Defendants' products since at least 2009.  Ex. 5.

128.    The previous Solicam DF label (also verified from Defendants' Web site) states it was copyrighted 2004, and is similarly marked with the '889 patent.  Ex. 6.  Upon information and belief, this label was utilized between the years 2004 and 2009.

129.    Although Defendants marked at least their Solicam DF products with the '889 patent during these time frames, the '889 patent expired no later than May 1994.

130.    Solicam DF was thus marked with the '889 patent, despite the fact the '889 patent expired.

131.    The instances of false marking shown in Exhibits 5 and 6 are representative and not exhaustive.

132.    Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

133.    Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '889 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

134.    Upon information and belief, Defendants have marked and continue to mark their products with the '889 patent for the purpose of deceiving the public into believing that their products are covered by the '889 patent.

135.    Upon information and belief, Defendants intentionally included the '889 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

## COUNT V

## FALSE PATENT MARKING OF PRODUCTS WITH THE '745 PATENT

136.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-135 of this Complaint.

137.    Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '745 patent.

138.    Such products include, but are not limited to, those sold under the product name, trade name and/or trademark Palisade EC.

139.   Images of the current label of this product (as verified through Defendants' Web site) are attached hereto as Exhibit 40 to this Complaint.

140.   The Palisade EC label is marked with the '745 patent and states that the label was copyrighted in 2010.  Upon information and belief, this label has been utilized on Defendants' products since at least 2010.  Ex. 40.

141.   The previous Palisade EC label (also verified from Defendants' Web site) states it was copyrighted 2006, and is similarly marked with the '745 patent.  Ex. 41.  Upon information and belief, this label was utilized between the years 2006 and 2010.

142.   Although Defendants marked at least their Palisade EC products with the '745 patent during these time frames, the '745 patent expired no later than October 2005.

143.   Palisade EC was thus marked with the '745 patent, despite the fact the '745 patent expired.

144.   The instances of false marking shown in Exhibits 40 and 41 are representative and not exhaustive.

145.   Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

146.   Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '745 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

147.   Upon information and belief, Defendants have marked and continue to mark their products with the '745 patent for the purpose of deceiving the public into believing that their products are covered by the '745 patent.

19

148.    Upon information and belief, Defendants intentionally included the '745 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

## COUNT VI

## FALSE PATENT MARKING OF PRODUCTS WITH THE '139 PATENT

149.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-148 of this Complaint.

150.    Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '139 patent.

151.    Such products include, but are not limited to, those sold under the product name, trade name and/or trademark Award.

152.    Images of the current label of this product (as verified through Defendants' Web site) are attached hereto as Exhibit 42 to this Complaint.

153.    The Award label is marked with the '139 patent and states that the label was copyrighted in 2010.  Upon information and belief, this label has been utilized on Defendants' products since at least 2010.  Ex. 42.

154.    The previous Award label (also verified from Defendants' Web site) states it was copyrighted 2006, and is similarly marked with the '139 patent.  Ex. 43.  Upon information and belief, this label was utilized between the years 2003 and 2010.  Although Defendants marked at least their Award products with the '139 patent during these time frames, the '139 patent expired no later than March 1999.

155.    Award was thus marked with the '139 patent, despite the fact the '139 patent expired.

156.    The instances of false marking shown in Exhibits 42 and 43 are representative and not exhaustive.

157.    Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

158.    Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '139 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

159.    Upon information and belief, Defendants have marked and continue to mark their products with the '139 patent for the purpose of deceiving the public into believing that their products are covered by the '139 patent.

160.    Upon information and belief, Defendants intentionally included the '139 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

## COUNT VII

## FALSE PATENT MARKING OF PRODUCTS WITH THE '210 PATENT

161.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-160 of this Complaint.

162.    Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '210 patent.

163.    Such products include, but are not limited to, those sold under the product name, trade name and/or trademark Solicam DF.

164.   Images of the current label of this product (as verified through Defendants' Web site) are attached hereto as Exhibit 5 to this Complaint.

165.   The Solicam DF label is marked with the '210 patent and states that the label was copyrighted in 2009.  Upon information and belief, this label has been utilized on Defendants' products since at least 2009.  Ex. 5.

166.   The previous Solicam DF label (also verified from Defendants' Web site) states it was copyrighted 2004, and is similarly marked with the '210 patent.  Ex. 6.  Upon information and belief, this label was utilized between the years 2004 and 2009.

167.   Although Defendants marked at least their Solicam DF products with the '210 patent during these time frames, the '210 patent expired no later than May 1994.

168.   Solicam DF was thus marked with the '210 patent, despite the fact the '210 patent expired.

169.   The instances of false marking shown in Exhibits 5 and 6 are representative and not exhaustive.

170.   Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

171.   Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '210 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

172.   Upon information and belief, Defendants have marked and continue to mark their products with the '210 patent for the purpose of deceiving the public into believing that their products are covered by the '210 patent.

22

173.    Upon information and belief, Defendants intentionally included the '210 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

## COUNT VIII

## FALSE PATENT MARKING OF PRODUCTS WITH THE '721 PATENT

174.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-173 of this Complaint.

175.    Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '721 patent.

176.    Such products include, but are not limited to, those sold under the product name, trade name and/or trademark Prime + EC.

177.    Images of the current label of this product (as verified through Defendants' Web site) are attached hereto as Exhibit 44 to this Complaint.

178.    The Prime + EC label is marked with the '721 patent and states that the label was copyrighted in 2007.  Upon information and belief, this label has been utilized on Defendants' products since at least 2007.  Ex. 44.

179.    The previous Prime + EC label (also verified from Defendants' Web site) states it was copyrighted 2003, and is similarly marked with the '721 patent.  Ex. 45.  Upon information and belief, this label was utilized between the years 2003 and 2007.

180.    Although Defendants marked at least their Prime + EC products with the '721 patent during these time frames, the '721 patent expired no later than December 1997.

181.    Prime + EC was thus marked with the '721 patent, despite the fact the '721 patent expired.

23

182.   The instances of false marking shown in Exhibits 44 and 45 are representative and not exhaustive.

183.   Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

184.   Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '721 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

185.   Upon information and belief, Defendants have marked and continue to mark their products with the '721 patent for the purpose of deceiving the public into believing that their products are covered by the '721 patent.

186.   Upon information and belief, Defendants intentionally included the '721 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

## COUNT IX

## FALSE PATENT MARKING OF PRODUCTS WITH THE '635 PATENT

187.   Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-186 of this Complaint.

188.   Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '635 patent.

189.   Such products include, but are not limited to, those sold under the product names, trade names and/or trademarks Beacon, Bicep Lite II Magnum, Bicep II Magnum, Bicep II

Magnum FC, Dual Magnum, Dual II Magnum, Dual II G Magnum, Dual II Magnum SI, Spirit, Northstar, Medal, Medal II, and Medal II AT.

190.     Images of the current labels of these products (as verified through Defendants' Web site) are attached hereto as Exhibits 46-58 to this Complaint.

191.     The Beacon label is marked with the '635 patent and states that the label was copyrighted in 2003.  Upon information and belief, this label has been utilized on Defendants' products since at least 2003.  Ex. 46.

192.     The Bicep Lite II Magnum label is marked with the '635 patent and states that the label was copyrighted in 2004.  Upon information and belief, this label has been utilized on Defendants' products since at least 2004.  Ex. 47.

193.     The Bicep II Magnum label is marked with the '635 patent and states that the label was copyrighted in 2009.  Upon information and belief, this label has been utilized on Defendants' products since at least 2009.  Ex. 48.

194.     The previous Bicep II Magnum label (also verified from Defendants' Web site) states it was copyrighted 2008, and is similarly marked with the '635 patent.  Ex. 59.  Upon information and belief, this label was utilized between the years 2008 and 2009.

195.     The Bicep II Magnum FC is marked with the '635 patent and states that the label was copyrighted in 2009.  Upon information and belief, this label has been utilized on Defendants' products since at least 2009.  Ex. 49.

196.     The previous Bicep II Magnum FC label (also verified from Defendants' Web site) states it was copyrighted 2008, and is similarly marked with the '635 patent.  Ex. 60.  Upon information and belief, this label was utilized between the years 2008 and 2009.

197.    The Dual Magnum label is marked with the '635 patent and states that the label was copyrighted in 2008.  Upon information and belief, this label has been utilized on Defendants' products since at least 2008.  Ex. 50.

198.    The Dual II Magnum SI label is marked with the '635 patent and states that the label was copyrighted in 2002.  Upon information and belief, this label has been utilized on Defendants' products since at least 2002.  Ex. 51.

199.    The Dual II Magnum label is marked with the '635 patent and states that the label was copyrighted in 2004.  Upon information and belief, this label has been utilized on Defendants' products since at least 2004.  Ex. 52.

200.    The Dual II G Magnum label is marked with the '635 patent and states that the label was copyrighted in 2005.  Upon information and belief, this label has been utilized on Defendants' products since at least 2005.  Ex. 53.

201.    The previous Dual II G Magnum label (also verified from Defendants' Web site) states it was copyrighted 2002, and is similarly marked with the '635 patent.  Ex. 61.  Upon information and belief, this label was utilized between the years 2002 and 2005.

202.    The Spirit label is marked with the '635 patent and states that the label was copyrighted in 2006.  Upon information and belief, this label has been utilized on Defendants' products since at least 2006.  Ex. 54.

203.    The previous Spirit label (also verified from Defendants' Web site) states it was copyrighted 2001, and is similarly marked with the '635 patent.  Ex. 62.  Upon information and belief, this label was utilized between the years 2001 and 2006.

204.    The Northstar label is marked with the '635 patent and states that the label was copyrighted in 2005.  Upon information and belief, this label has been utilized on Defendants' products since at least 2005.  Ex. 55.

205.    The previous Northstar label (also verified from Defendants' Web site) states it was copyrighted 2001, and is similarly marked with the '635 patent.  Ex. 63.  Upon information and belief, this label was utilized between the years 2001 and 2005.

206.    The Medal label is marked with the '635 patent and states that the label was copyrighted in 2004.  Upon information and belief, this label has been utilized on Defendants' products since at least 2004.  Ex. 56.

207.    The Medal II label is marked with the '635 patent and states that the label was copyrighted in 2010.  Upon information and belief, this label has been utilized on Defendants' products since at least 2010.  Ex. 57.

208.    The previous Medal II label (also verified from Defendants' Web site) states it was copyrighted 2004, and is similarly marked with the '635 patent.  Ex. 64.  Upon information and belief, this label was utilized between the years 2004 and 2010.

209.    The Medal II AT label is marked with the '635 patent and states that the label was copyrighted in 2008.  Upon information and belief, this label has been utilized on Defendants' products since at least 2008.  Ex. 58.

210.    The previous Medal II AT label (also verified from Defendants' Web site) states it was copyrighted 2004, and is similarly marked with the '635 patent.  Ex. 65.  Upon information and belief, this label was utilized between the years 2004 and 2008.

211.    Although Defendants marked at least their Beacon, Bicep Lite II Magnum, Bicep II Magnum, Bicep II Magnum FC, Dual Magnum, Dual II Magnum, Dual II G Magnum, Dual II

27

Magnum SI, Spirit, Northstar, Medal, Medal II, and Medal II AT products with the '635 patent during these time frames, the '635 patent expired no later than January 2003.

212.    Beacon, Bicep Lite II Magnum, Bicep II Magnum, Bicep II Magnum FC, Dual Magnum, Dual II Magnum, Dual II G Magnum, Dual II Magnum SI, Spirit, Northstar, Medal, Medal II, and Medal II AT were thus marked with the '635 patent, despite the fact the '635 patent expired.

213.    The instances of false marking shown in Exhibits 46-64 are representative and not exhaustive.

214.    Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

215.    Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '635 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

216.    Upon information and belief, Defendants have marked and continue to mark their products with the '635 patent for the purpose of deceiving the public into believing that their products are covered by the '635 patent.

217.    Upon information and belief, Defendants intentionally included the '635 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

## COUNT X

## FALSE PATENT MARKING OF PRODUCTS WITH THE '361 PATENT

28

218.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-217 of this Complaint.

219.    Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '361 patent.

220.    Such products include, but are not limited to, those sold under the product names, trade names and/or trademarks Bicep Lite II Magnum, Bicep II Magnum, Bicep II Magnum FC, Dual Magnum, Dual II Magnum, Dual II G Magnum, Dual II Magnum SI, Expert, Medal, Medal II, and Medal II AT.

221.    Images of the current labels of these products (as verified through Defendants' Web site) are attached hereto as Exhibits 47-53, 56-58, and 66 to this Complaint.

222.    The Bicep Lite II Magnum label is marked with the '361 patent and states that the label was copyrighted in 2004. Upon information and belief, this label has been utilized on Defendants' products since at least 2004. Ex. 47.

223.    The Bicep II Magnum label is marked with the '361 patent and states that the label was copyrighted in 2009. Upon information and belief, this label has been utilized on Defendants' products since at least 2009. Ex. 48.

224.    The previous Bicep II Magnum label (also verified from Defendants' Web site) states it was copyrighted 2008, and is similarly marked with the '361 patent. Ex. 59. Upon information and belief, this label was utilized between the years 2008 and 2009.

225.    The Bicep II Magnum FC is marked with the '361 patent and states that the label was copyrighted in 2009. Upon information and belief, this label has been utilized on Defendants' products since at least 2009. Ex. 49.

29

226. The previous Bicep II Magnum FC label (also verified from Defendants' Web site) states it was copyrighted 2008, and is similarly marked with the '361 patent. Ex. 60. Upon information and belief, this label was utilized between the years 2008 and 2009.

227. The Dual Magnum label is marked with the '361 patent and states that the label was copyrighted in 2008. Upon information and belief, this label has been utilized on Defendants' products since at least 2008. Ex. 50.

228. The Dual II Magnum SI label is marked with the '361 patent and states that the label was copyrighted in 2002. Upon information and belief, this label has been utilized on Defendants' products since at least 2002. Ex. 51.

229. The Dual II Magnum label is marked with the '361 patent and states that the label was copyrighted in 2004. Upon information and belief, this label has been utilized on Defendants' products since at least 2004. Ex. 52.

230. The Dual II G Magnum label is marked with the '361 patent and states that the label was copyrighted in 2005. Upon information and belief, this label has been utilized on Defendants' products since at least 2005. Ex. 53.

231. The previous Dual II G Magnum label (also verified from Defendants' Web site) states it was copyrighted 2002, and is similarly marked with the '361 patent. Ex.61. Upon information and belief, this label was utilized between the years 2002 and 2005.

232. The Expert label is marked with the '361 patent and states that the label was copyrighted in 2008. Upon information and belief, this label has been utilized on Defendants' products since at least 2008. Ex. 66.

233. The previous Expert label (also verified from Defendants' Web site) states it was copyrighted 2004, and is similarly marked with the '361 patent. Ex. 67. Upon information and belief, this label was utilized between the years 2004 and 2008.

234. The Medal label is marked with the '361 patent and states that the label was copyrighted in 2004. Upon information and belief, this label has been utilized on Defendants' products since at least 2004. Ex. 56.

235. The Medal II label is marked with the '361 patent and states that the label was copyrighted in 2010. Upon information and belief, this label has been utilized on Defendants' products since at least 2010. Ex. 57.

236. The previous Medal II label (also verified from Defendants' Web site) states it was copyrighted 2004, and is similarly marked with the '361 patent. Ex. 64. Upon information and belief, this label was utilized between the years 2004 and 2010.

237. The Medal II AT label is marked with the '361 patent and states that the label was copyrighted in 2008. Upon information and belief, this label has been utilized on Defendants' products since at least 2008. Ex. 58.

238. The previous Medal II AT label (also verified from Defendants' Web site) states it was copyrighted 2004, and is similarly marked with the '361 patent. Ex. 65. Upon information and belief, this label was utilized between the years 2004 and 2008.

239. Although Defendants marked at least their Bicep Lite II Magnum, Bicep II Magnum, Bicep II Magnum FC, Dual Magnum, Dual II Magnum, Dual II G Magnum, Dual II Magnum SI, Expert, Medal, Medal II, and Medal II AT products with the '361 patent during these time frames, the '361 patent expired no later than December 2003.

240.    Bicep Lite II Magnum, Bicep II Magnum, Bicep II Magnum FC, Dual Magnum, Dual II Magnum, Dual II G Magnum, Dual II Magnum SI, Expert, Medal, Medal II, and Medal II AT were thus marked with the '361 patent, despite the fact the '361 patent expired.

241.    The instances of false marking shown in Exhibits 47-53, 56-61, and 66-67 are representative and not exhaustive.

242.    Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

243.    Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '361 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

244.    Upon information and belief, Defendants have marked and continue to mark their products with the '361 patent for the purpose of deceiving the public into believing that their products are covered by the '361 patent.

245.    Upon information and belief, Defendants intentionally included the '361 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

<div align="center">

**COUNT XI**

**FALSE PATENT MARKING OF PRODUCTS WITH THE '819 PATENT**

</div>

246.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-245 of this Complaint.

247.    Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '819 patent.

<div align="center">32</div>

248.    Such products include, but are not limited to, those sold under the product names, trade names and/or trademarks Bicep Lite II Magnum, Bicep II Magnum, Bicep II Magnum FC, Dual Magnum, Dual II Magnum, Dual II G Magnum, Dual II Magnum SI, Spirit, Medal, Medal II, and Medal II AT.

249.    Images of the current labels of these products (as verified through Defendants' Web site) are attached hereto as Exhibits 48-54 and 56-58 to this Complaint.

250.    The Bicep Lite II Magnum label is marked with the '819 patent and states that the label was copyrighted in 2004.  Upon information and belief, this label has been utilized on Defendants' products since at least 2004.  Ex. 47.

251.    The Bicep II Magnum label is marked with the '819 patent and states that the label was copyrighted in 2009.  Upon information and belief, this label has been utilized on Defendants' products since at least 2009.  Ex. 48.

252.    The previous Bicep II Magnum label (also verified from Defendants' Web site) states it was copyrighted 2008, and is similarly marked with the '819 patent.  Ex. 59.  Upon information and belief, this label was utilized between the years 2008 and 2009.

253.    The Bicep II Magnum FC is marked with the '819 patent and states that the label was copyrighted in 2009.  Upon information and belief, this label has been utilized on Defendants' products since at least 2009.  Ex. 49.

254.    The previous Bicep II Magnum FC label (also verified from Defendants' Web site) states it was copyrighted 2008, and is similarly marked with the '819 patent.  Ex. 60.  Upon information and belief, this label was utilized between the years 2008 and 2009.

255.   The Dual Magnum label is marked with the '819 patent and states that the label was copyrighted in 2008. Upon information and belief, this label has been utilized on Defendants' products since at least 2008. Ex. 50.

256.   The Dual II Magnum SI label is marked with the '819 patent and states that the label was copyrighted in 2002. Upon information and belief, this label has been utilized on Defendants' products since at least 2002. Ex. 51.

257.   The Dual II Magnum label is marked with the '819 patent and states that the label was copyrighted in 2004. Upon information and belief, this label has been utilized on Defendants' products since at least 2004. Ex. 52.

258.   The Dual II G Magnum label is marked with the '819 patent and states that the label was copyrighted in 2005. Upon information and belief, this label has been utilized on Defendants' products since at least 2005. Ex. 53.

259.   The previous Dual II G Magnum label (also verified from Defendants' Web site) states it was copyrighted 2002, and is similarly marked with the '819 patent. Ex. 61. Upon information and belief, this label was utilized between the years 2002 and 2005.

260.   The Spirit label is marked with the '819 patent and states that the label was copyrighted in 2006. Upon information and belief, this label has been utilized on Defendants' products since at least 2006. Ex. 54.

261.   The previous Spirit label (also verified from Defendants' Web site) states it was copyrighted 2001, and is similarly marked with the '819 patent. Ex. 62. Upon information and belief, this label was utilized between the years 2001 and 2006.

262.   The Medal label states that it was copyrighted in 2004. Upon information and belief, this label has been utilized on Defendants' products since at least 2004. Ex. 56.

34

263.    The Medal II label is marked with the '819 patent and states that the label was copyrighted in 2010.  Upon information and belief, this label has been utilized on Defendants' products since at least 2010.  Ex. 57.

264.    The previous Medal II label (also verified from Defendants' Web site) states it was copyrighted 2004, and is similarly marked with the '819 patent.  Ex. 64.  Upon information and belief, this label was utilized between the years 2004 and 2010.

265.    The Medal II AT label is marked with the '819 patent states that the label was copyrighted in 2008.  Upon information and belief, this label has been utilized on Defendants' products since at least 2008.  Ex. 58.

266.    The previous Medal II AT label (also verified from Defendants' Web site) states it was copyrighted 2004, and is similarly marked with the '819 patent.  Ex. 65.  Upon information and belief, this label was utilized between the years 2004 and 2008.

267.    Although Defendants marked at least their Bicep Lite II Magnum, Bicep II Magnum, Bicep II Magnum FC, Dual Magnum, Dual II Magnum, Dual II G Magnum, Dual II Magnum SI, Spirit, Medal, Medal II, and Medal II AT products with the '819 patent during these time frames, the '819 patent expired no later than December 2005.

268.    Bicep Lite II Magnum, Bicep II Magnum, Bicep II Magnum FC, Dual Magnum, Dual II Magnum, Dual II G Magnum, Dual II Magnum SI, Spirit, Medal, Medal II, and Medal II AT were thus marked with the '819 patent, despite the fact the '819 patent expired.

269.    The instances of false marking shown in Exhibits 47-54 and 56-62 are representative and not exhaustive.

270.    Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

271.    Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '819 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

272.    Upon information and belief, Defendants have marked and continue to mark their products with the '819 patent for the purpose of deceiving the public into believing that their products are covered by the '819 patent.

273.    Upon information and belief, Defendants intentionally included the '819 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

## COUNT XII

## FALSE PATENT MARKING OF PRODUCTS WITH THE '606 PATENT

274.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-273 of this Complaint.

275.    Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '606 patent.

276.    Such products include, but are not limited to, those sold under the product names, trade names and/or trademarks Pennant Magnum, Bicep Lite II Magnum, Bicep II Magnum, Bicep II Magnum FC, Dual Magnum, Dual II Magnum, Dual II G Magnum, Dual II Magnum SI, Expert, Medal, Medal II, and Medal II AT.

277.    Images of the current labels of these products (as verified through Defendants' Web site) are attached hereto as Exhibits 47-53, 56-58, 66, and 68 to this Complaint.

278.    The Pennant Magnum label is marked with the '606 patent and states that the label was copyrighted in 2010. Upon information and belief, this label has been utilized on Defendants' products since at least 2010. Ex. 68.

279.    The previous Pennant Magnum label (also verified from Defendants' Web site) states it was copyrighted 2003, and is similarly marked with the '606 patent. Ex. 69. Upon information and belief, this label was utilized between the years 2003 and 2010.

280.    The Bicep Lite II Magnum label is marked with the '606 patent and states that the label was copyrighted in 2004. Upon information and belief, this label has been utilized on Defendants' products since at least 2004. Ex. 47.

281.    The Bicep II Magnum label is marked with the '606 patent and states that the label was copyrighted in 2009. Upon information and belief, this label has been utilized on Defendants' products since at least 2009. Ex. 48.

282.    The previous Bicep II Magnum label (also verified from Defendants' Web site) states it was copyrighted 2008, and is similarly marked with the '606 patent. Ex. 59. Upon information and belief, this label was utilized between the years 2008 and 2009.

283.    The Bicep II Magnum FC is marked with the '606 patent and states that the label was copyrighted in 2009. Upon information and belief, this label has been utilized on Defendants' products since at least 2009. Ex. 49.

284.    The previous Bicep II Magnum FC label (also verified from Defendants' Web site) states it was copyrighted 2008, and is similarly marked with the '606 patent. Ex. 60. Upon information and belief, this label was utilized between the years 2008 and 2009.

285.    The Dual Magnum label is marked with the '606 patent and states that the label was copyrighted in 2008.  Upon information and belief, this label has been utilized on Defendants' products since at least 2008.  Ex. 50.

286.    The Dual II Magnum SI label is marked with the '606 patent and states that the label was copyrighted in 2002.  Upon information and belief, this label has been utilized on Defendants' products since at least 2002.  Ex. 51.

287.    The Dual II Magnum label is marked with the '606 patent and states that the label was copyrighted in 2004.  Upon information and belief, this label has been utilized on Defendants' products since at least 2004.  Ex. 52.

288.    The Dual II G Magnum label is marked with the '606 patent and states that the label was copyrighted in 2005.  Upon information and belief, this label has been utilized on Defendants' products since at least 2005.  Ex. 53.

289.    The previous Dual II G Magnum label (also verified from Defendants' Web site) states it was copyrighted 2002, and is similarly marked with the '606 patent.  Ex. 61.  Upon information and belief, this label was utilized between the years 2002 and 2005.

290.    The Expert label is marked with the '606 patent and states that the label was copyrighted in 2008.  Upon information and belief, this label has been utilized on Defendants' products since at least 2008.  Ex. 66.

291.    The previous Expert label (also verified from Defendants' Web site) states it was copyrighted 2004, and is similarly marked with the '606 patent.  Ex. 67.  Upon information and belief, this label was utilized between the years 2004 and 2008.

292.    The Medal label is marked with the '606 patent and states that the label was copyrighted in 2004.  Upon information and belief, this label has been utilized on Defendants' products since at least 2004.  Ex. 56.

293.    The Medal II label is marked with the '606 patent and states that the label was copyrighted in 2010.  Upon information and belief, this label has been utilized on Defendants' products since at least 2010.  Ex. 57.

294.    The previous Medal II label (also verified from Defendants' Web site) states it was copyrighted 2004, and is similarly marked with the '606 patent.  Ex. 64.  Upon information and belief, this label was utilized between the years 2004 and 2010.

295.    The Medal II AT label is marked with the '606 patent and states that the label was copyrighted in 2008.  Upon information and belief, this label has been utilized on Defendants' products since at least 2008.  Ex. 58.

296.    The previous Medal II AT label (also verified from Defendants' Web site) states it was copyrighted 2004, and is similarly marked with the '606 patent.  Ex. 65.  Upon information and belief, this label was utilized between the years 2004 and 2008.

297.    Although Defendants marked at least their Pennant Magnum, Bicep Lite II Magnum, Bicep II Magnum, Bicep II Magnum FC, Dual Magnum, Dual II Magnum, Dual II G Magnum, Dual II Magnum SI, Expert, Medal, Medal II, and Medal II AT products with the '606 patent during these time frames, the '606 patent expired no later than March 2008.

298.    Pennant Magnum, Bicep Lite II Magnum, Bicep II Magnum, Bicep II Magnum FC, Dual Magnum, Dual II Magnum, Dual II G Magnum, Dual II Magnum SI, Expert, Medal, Medal II, and Medal II AT were thus marked with the '606 patent, despite the fact the '606 patent expired.

299.    The instances of false marking shown in Exhibits 47-53, 56-61, 64-65, and 67-69 are representative and not exhaustive.

300.    Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

301.    Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '606 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

302.    Upon information and belief, Defendants have marked and continue to mark their products with the '606 patent for the purpose of deceiving the public into believing that their products are covered by the '606 patent.

303.    Upon information and belief, Defendants intentionally included the '606 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

## COUNT XIII

## FALSE PATENT MARKING OF PRODUCTS WITH THE '158 PATENT

304.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-303 of this Complaint.

305.    Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '158 patent.

306.    Such products include, but are not limited to, those sold under the product names, trade names and/or trademarks Camix, Lumax, Lexar, Callisto, and Callisto Xtra.

307.    Images of the current labels of these products (as verified through Defendants' Web site) are attached hereto as Exhibits 70-74 to this Complaint.

308.    The Camix label is marked with the '158 patent and states that the label was copyrighted in 2009.  Upon information and belief, this label has been utilized on Defendants' products since at least 2009.  Ex. 70.

309.    The previous Camix label (also verified from Defendants' Web site) states it was copyrighted 2008, and is similarly marked with the '158 patent.  Ex. 74.  Upon information and belief, this label was utilized between the years 2008 and 2009.

310.    The Lumax label states that it was copyrighted in 2009.  Upon information and belief, this label has been utilized on Defendants' products since at least 2009.  Ex. 71.

311.    The previous Lumax label (also verified from Defendants' Web site) states it was copyrighted 2008, and is similarly marked with the '158 patent.  Ex. 76.  Upon information and belief, this label was utilized between the years 2008 and 2009.

312.    The Lexar label states that it was copyrighted in 2009.  Upon information and belief, this label has been utilized on Defendants' products since at least 2009.  Ex. 72.

313.    The previous Lexar label (also verified from Defendants' Web site) states it was copyrighted 2008, and is similarly marked with the '158 patent.  Ex. 77.  Upon information and belief, this label was utilized between the years 2008 and 2009.

314.    The Callisto label states that it was copyrighted in 2009.  Upon information and belief, this label has been utilized on Defendants' products since at least 2009.  Ex. 73.

315.    The previous Callisto label (also verified from Defendants' Web site) states it was copyrighted 2008, and is similarly marked with the '158 patent.  Ex. 78.  Upon information and belief, this label was utilized between the years 2008 and 2009.

41

316.    The Callisto Xtra label states that it was copyrighted in 2010.  Upon information and belief, this label has been utilized on Defendants' products since at least 2010.  Ex. 74.

317.    Although Defendants marked at least their Camix, Lumax, Lexar, Callisto, and Callisto Xtra products with the '158 patent during these time frames, the '158 patent expired no later than April 2008.

318.    Camix, Lumax, Lexar, Callisto and Callisto Xtra were thus marked with the '158 patent, despite the fact the '158 patent expired.

319.    The instances of false marking shown in Exhibits 70-78 are representative and not exhaustive.

320.    Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

321.    Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '158 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

322.    Upon information and belief, Defendants have marked and continue to mark their products with the '158 patent for the purpose of deceiving the public into believing that their products are covered by the '158 patent.

323.    Upon information and belief, Defendants intentionally included the '158 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

## COUNT XIV

## FALSE PATENT MARKING OF PRODUCTS WITH THE '800 PATENT

324.   Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-323 of this Complaint.

325.   Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '800 patent.

326.   Such products include, but are not limited to, those sold under the product name, trade name and/or trademark Maxim MZ.

327.   Images of the current label of this product (as verified through Defendants' Web site) are attached hereto as Exhibit 79 to this Complaint.

328.   The Maxim MZ label is marked with the '800 patent and states that the label was copyrighted in 2010.  Upon information and belief, this label has been utilized on Defendants' products since at least 2010.  Ex. 79.

329.   The previous Maxim MZ label (also verified from Defendants' Web site) states it was copyrighted 2003, and is similarly marked with the '800 patent. Ex. 80.  Upon information and belief, this label was utilized between the years 2003 and 2010.

330.   Although Defendants marked at least their Maxim MZ products with the '800 patent during these time frames, the '800 patent expired no later than June 2006.

331.   Maxim MZ was thus marked with the '800 patent, despite the fact the '800 patent expired.

332.   The instances of false marking shown in Exhibits 79 and 80 are representative and not exhaustive.

333.   Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

334.    Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '800 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

335.    Upon information and belief, Defendants have marked and continue to mark their products with the '800 patent for the purpose of deceiving the public into believing that their products are covered by the '800 patent.

336.    Upon information and belief, Defendants intentionally included the '800 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

## COUNT XV

### FALSE PATENT MARKING OF PRODUCTS WITH THE '749 PATENT

337.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-336 of this Complaint.

338.    Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '749 patent.

339.    Such products include, but are not limited to, those sold under the product name, trade name and/or trademark Denim.

340.    Images of the current label of this product (as verified through Defendants' Web site) are attached hereto as Exhibits 81 to this Complaint.

341.    The Denim label is marked with the '749 patent and states that the label was copyrighted in 2008.  Upon information and belief, this label has been utilized on Defendants' products since at least 2008.  Ex. 81.

342.   The previous Denim label (also verified from Defendants' Web site) states it was copyrighted 2005, and is similarly marked with the '749 patent.  Ex. 82.  Upon information and belief, this label was utilized between the years 2005 and 2008.

343.   Although Defendants marked at least their Denim products with the '749 patent during these time frames, the '749 patent expired no later than January 2001.

344.   Denim was thus marked with the '749 patent, despite the fact the '749 patent expired.

345.   The instances of false marking shown in Exhibits 81 and 82 are representative and not exhaustive.

346.   Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

347.   Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '749 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

348.   Upon information and belief, Defendants have marked and continue to mark their products with the '749 patent for the purpose of deceiving the public into believing that their products are covered by the '749 patent.

349.   Upon information and belief, Defendants intentionally included the '749 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

## COUNT XVI

## FALSE PATENT MARKING OF PRODUCTS WITH THE '663 PATENT

350.   Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-349 of this Complaint.

351.   Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '663 patent.

352.   Such products include, but are not limited to, those sold under the product name, trade name and/or trademark Denim.

353.   Images of the current label of this product (as verified through Defendants' Web site) are attached hereto as Exhibit 81 to this Complaint.

354.   The Denim label is marked with the '663 patent and states that the label was copyrighted in 2008.  Upon information and belief, this label has been utilized on Defendants' products since at least 2008.  Ex. 81.

355.   The previous Denim label (also verified from Defendants' Web site) states it was copyrighted 2005, and is similarly marked with the '663 patent.  Ex. 82.  Upon information and belief, this label was utilized between the years 2005 and 2008.

356.   Although Defendants marked at least their Denim products with the '663 patent during these time frames, the '663 patent expired no later than March 2002.

357.   Denim was thus marked with the '663 patent, despite the fact the '663 patent expired.

358.   The instances of false marking shown in Exhibits 81-82 are representative and not exhaustive.

359.   Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

360.     Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '663 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

361.     Upon information and belief, Defendants have marked and continue to mark their products with the '663 patent for the purpose of deceiving the public into believing that their products are covered by the '663 patent.

362.     Upon information and belief, Defendants intentionally included the '663 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

## COUNT XVII

### FALSE PATENT MARKING OF PRODUCTS WITH THE '163 PATENT

363.     Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-362 of this Complaint.

364.     Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '163 patent.

365.     Such products include, but are not limited to, those sold under the product name, trade name and/or trademark DemonMax and Probuild TC.

366.     Images of the current labels of these products (as verified through Defendants' Web site) are attached hereto as Exhibits 2 and 83 to this Complaint.

367.     The DemonMax label is marked with the '163 patent and states that the label was copyrighted in 2005.  Upon information and belief, this label has been utilized on Defendants' products since the product's launch in 2005.  Exs. 1 and 2.

368.    The previous DemonMax label (also verified from Defendants' Web site) states it was copyrighted 2004, and is similarly marked with the '169 patent. Ex. 84. Upon information and belief, this label was utilized between the years 2004 and 2005.

369.    The Probuild TC label is marked with the '163 patent and states that the label was copyrighted in 2005. Upon information and belief, this label has been utilized on Defendants' products since 2005. Ex. 83.

370.    The previous Probuild TC label (also verified from Defendants' Web site) states it was copyrighted 2004, and is similarly marked with the '169 patent. Ex. 85. Upon information and belief, this label was utilized between the years 2004 and 2005.

371.    Although Defendants marked at least their DemonMax and Probuild TC products with the '163 patent during these time frames, the '163 patent expired no later than August 1994.

372.    DemonMax and Probuild TC were thus marked with the '163 patent, despite the fact the '163 patent expired.

373.    The instances of false marking shown in Exhibits 2 and 83-85 are representative and not exhaustive.

374.    Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

375.    Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '163 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

376.    Upon information and belief, Defendants have marked and continue to mark their products with the '163 patent for the purpose of deceiving the public into believing that their products are covered by the '163 patent.

377.    Upon information and belief, Defendants intentionally included the '163 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

## COUNT XVIII

## FALSE PATENT MARKING OF PRODUCTS WITH THE '439 PATENT

378.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-377 of this Complaint.

379.    Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '439 patent.

380.    Such products include, but are not limited to, those sold under the product name, trade name and/or trademark Fulfill.

381.    Images of the current label of this product (as verified through Defendants' Web site) are attached hereto as Exhibit 86 to this Complaint.

382.    The Fulfill label is marked with the '439 patent and states that the label was copyrighted in 2009. Upon information and belief, this label has been utilized on Defendants' products since at least 2009. Ex. 86.

383.    The previous Fulfill label (also verified from Defendants' Web site) states it was copyrighted in 2006, and is similarly marked with the '439 patent. Ex. 87. Upon information and belief, this label was utilized between the years 2006 and 2009.

384.    Although Defendants marked at least their Fulfill products with the '439 patent during these time frames, the '439 patent expired no later than October 2008.

385.    Fulfill was thus marked with the '439 patent, despite the fact the '439 patent expired.

386.    The instances of false marking shown in Exhibits 86 and 87 are representative and not exhaustive.

387.    Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

388.    Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '439 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

389.    Upon information and belief, Defendants have marked and continue to mark their products with the '439 patent for the purpose of deceiving the public into believing that their products are covered by the '439 patent.

390.    Upon information and belief, Defendants intentionally included the '439 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

## COUNT XIX

## FALSE PATENT MARKING OF PRODUCTS WITH THE '405 PATENT

391.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-390 of this Complaint.

392.    Defendants make, sell, or have made and have sold, a number of products which they mark or cause to be marked with the '405 patent.

393.    Such products include, but are not limited to, those sold under the product name, trade name and/or trademark Bonzi.

394.    Images of the current label of this product (as verified through Defendants' Web site) are attached hereto as Exhibit 88 to this Complaint.

395.    The Bonzi label is marked with the '405 patent and states that the label was copyrighted in 2005. Upon information and belief, this label has been utilized on Defendants' products since at least 2005. Ex. 88.

396.    The previous Bonzi label (also verified from Defendants' Web site) states it was copyrighted 2002, and is similarly marked with the '405 patent. Ex. 89. Upon information and belief, this label was utilized between the years 2002 and 2005.

397.    Although Defendants marked at least their Bonzi products with the '405 patent during these time frames, the '405 patent expired no later than October 2008.

398.    Bonzi was thus marked with the '405 patent, despite the fact the '405 patent expired.

399.    The instances of false marking shown in Exhibits 88 and 89 are representative and not exhaustive.

400.    Defendants knew or reasonably should have known that the purpose of marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

401.   Defendants knew or reasonably should have known that the articles they marked and continue to mark with the '405 patent are not covered by the expired patent marked on their products because expired patents have no monopoly rights.

402.   Upon information and belief, Defendants have marked and continue to mark their products with the '405 patent for the purpose of deceiving the public into believing that their products are covered by the '405 patent.

403.   Upon information and belief, Defendants intentionally included the '405 patent on their products in an attempt to prevent competitors from making and selling the same or similar or competing products.

<center>**PRAYER FOR RELIEF**</center>

WHEREFORE, Relator prays that this Court enter judgment in their favor and against Defendants as follows:

A. Entering an injunction prohibiting Defendants, and its officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from further violating 35 U.S.C. § 292.

B. Order Defendants to pay a civil monetary fine of $500 per false marking offense, or an alternative amount as determined by the Court, one-half of which shall be paid to the United States;

C. Order Defendants to provide an accounting for any falsely marked products not presented at trial and a monetary award set by the Court for such falsely marked articles;

D. Order Defendants to pay all costs of this action, including attorneys' fees and all available interest; and

<center>52</center>

E. Grant Relator any such other and further relief as the Court may deem just and equitable.

<div style="margin-left:40%">

Respectfully submitted,
TED SPRAUGE,

By his attorneys,
SIMMONS BROWDER GIANARIS
   ANGELIDES & BARNERD LLC

</div>

Dated:  June 11, 2010

<div style="margin-left:40%">

By:   */s/ Paul A. Lesko*
   Paul A. Lesko, IL Bar No. 6288806
   John D. Simmons, IL Bar No. 6231296
   Jo Anna Pollock, IL Bar No. 6273491
   707 Berkshire Blvd.
   P.O. Box 521
   East Alton, Illinois 62024
   (618) 259-2222
   (618) 259-2251 – facsimile
   plesko@simmonsfirm.com
   jsimmons@simmonsfirm.com
   jpollock@simmonsfirm.com

</div>